OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
SHARDE T. SKAHAN, CA Bar No. 286157
sharde.skahan@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
KEURIG DR PEPPER INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| KARINA NUNEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG DR. PEPPER, INC., a Delaware Corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 5:19-cv-00010<br><br>**DEFENDANT KEURIG DR PEPPER INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Certification of Interested Parties; Corporate Disclosure Statement; and Declarations of Amber L. Roller and Erkan Cetin in Support of Removal]<br><br>Complaint Filed: November 29, 2018<br>Trial Date:      None |
|---|---|

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, defendant Keurig Dr Pepper Inc. ("KDP") removes this action from the Superior Court of the State of California in the County of San Bernardino to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, § 1441(a), and 1446.  In support of such removal, KDP asserts the following grounds for removal:

## I.     THE STATE COURT ACTION

1.     On or about November 29, 2018, plaintiff Karina Nunez (hereinafter "Plaintiff") filed an action entitled *Karina Nunez, an individual, v. Kerurig Dr. Pepper, Inc., a Delaware corporation; and Does 1 through 50, inclusive*, Case No. CIVDS1830926 ("Complaint" or "State Court Action").  The Complaint asserts causes of action for (1) Retaliation (Labor Code § 1102.5); (2) Wrongful Termination in Violation of Public Policy; (3) Sexual Harassment (Gov. Code § 12940(j)); and (4) Failure to Prevent Sexual Harassment (Gov. Code §12940(k)).

2.     On or about December 3, 2018, Plaintiff served KDP with a copy of the Complaint.  A true and correct copy of the Complaint is attached to the Declaration of Amber L. Roller ("Roller Decl.") as Exhibit 1.

3.     KDP filed its Answer to the Complaint on January 2, 2019.  Attached hereto as Exhibit 2 is a true and correct copy of KDP's Answer to the Complaint.  (*See* Roller Decl., ¶ 4, Ex. 2.)

4.     Plaintiff has not yet identified any of the fictitious "Doe" defendants named in the Complaint.

5.     A Trial Setting Conference has been set in the Superior Court for May 29, 2019.  A copy of the Notice of Trial Setting Conference is attached as Exhibit 3 to the Roller Declaration.  (*See* Roller Decl., ¶ 5, Ex. 3.)

6. A Certificate of Assignment also was filed in the State Court Action, a true and correct copy of which is attached as Exhibit 4 to the Roller Declaration. (*See* Roller Decl., ¶ 5, Ex. 4.)

7. The documents in Exhibits 1-4 constitute all pleadings, process and other documents that were filed in in the Superior Court of the State of California for the County of San Bernardino, and received by and/or served by KDP in this action. (*See* Roller Decl., ¶ 5.)

8. As discussed in greater detail below, jurisdiction based on diversity of citizenship is proper because KDP is not a citizen of California.

## II. TIMELINESS OF REMOVAL AND ALL PROCEDURAL REQUIREMENTS HAVE BEEN MET

9. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within 30 days of service upon KDP. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (30 day deadline to remove commences upon service of the summons and complaint).

10. In accordance with 28 U.S.C. §1446(d), KDP will promptly give written notice to Plaintiff of the filing of this Notice of Removal, and will file a copy of the Notice with the clerk of the Superior Court of the State of California, County of San Bernardino. Further, in accordance with Federal Rule of Civil Procedure 7.1 and Central District of California Local Rule 7.1-1, respectively, KDP concurrently files its Corporate Disclosure Statement and Certification of Interested Parties.

## III. VENUE

11. In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the District Court of the United States in which the action is pending. The State Court Action was pending in the Superior Court of California for the County of San Bernardino, which is located within the Eastern Division of the Central District of California. Therefore, venue is proper in this Court because it is the "district and

division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 84(c)(1) (describing the "Eastern Division" of the Central District of California as comprising, among others, the county of San Bernardino).

## IV. COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES

12. This matter is a civil action within the meaning of 28 U.S.C. § 1331, and one over which this Court has original jurisdiction under 28 U.S.C. § 1332. It is an action which may be removed to this Court by KDP pursuant to the provisions of 28 U.S.C. § 1441(a) in that it is a civil action between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

13. **Plaintiff is a Citizen of California.** For diversity purposes, a person is a "citizen" of the state in which she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place she resides with the intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court Complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co.*, 19 F.3d at 519-20 (allegation by party in state court Complaint of residency created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise).

14. Plaintiff's Complaint alleges that she "is, and at all times relevant, was an individual, who resided in San Bernardino County, State of California." (Ex. 1, Complaint ¶ 1.) The Complaint also alleges that Plaintiff worked at KDP's Victorville, California location. (Ex. 1, Complaint ¶ 1.) Accordingly, Plaintiff is a citizen of California for purposes of determining diversity and removal jurisdiction.

15. **Defendant KDP is a Citizen of Delaware, Texas, and Massachusetts.** For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c).  A corporation's principal place of business is where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation's headquarters can be found. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93; 130 S. Ct. 1181, 1192 (2010).

16. KDP is now, and ever since this action commenced has been, incorporated under the laws of the state of Delaware.  (*See* Declaration of Erkan Cetin ("Cetin Decl."), ¶ 2.)

17. Furthermore, the majority of KDP's executive and administrative functions take place in Plano, Texas and/or Burlington, Massachusetts.  All of KDP's executives have offices in, and regularly work from, one of these two locations.  The functions performed at KDP's Texas and Massachusetts locations include the activities of all of its high-level management team, and the majority of its domestic administrative functions, including payroll, accounting, purchasing, marketing, human resources and information systems.  All of KDP's company-wide policies and procedures are formulated by its executives in Plano, Texas or Burlington, Massachusetts.  (*See* Cetin Decl. ¶ 2.)  Accordingly, KDP is not a citizen of the State of California.  KDP is, and has been at all times since this action commenced, a citizen of Texas, Massachusetts, and Delaware.

18. **The Citizenship of "Doe" Defendants Must Be Disregarded.**  The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal.  *See* 28 U.S.C. § 1441(b)(1); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that, in determining whether diversity of citizenship exists, only the named defendants are considered).  Therefore, Plaintiff's inclusion in her civil complaint of "Does 1 through 50" (Complaint, ¶ 4), cannot defeat diversity jurisdiction.

## V. THE AMOUNT IN CONTROVERSY EXCEEDS AN AGGREGATE OF $75,000, EXCLUSIVE OF INTEREST AND COSTS

19. The Court has original jurisdiction over the case pursuant to United States Code, Title 28, Sections 1332(a) and 1441(a), on the basis that the amount in controversy exceeds the requisite $75,000 minimum, exclusive of interest and costs.

20. This Court's jurisdictional minimum, an amount in controversy in excess of $75,000, was satisfied at the time of the filing of this action, and still is satisfied, by the facts set forth herein and more specifically described below.

21. The Federal Court's Jurisdiction and Venue Clarification Act of 2011 ("JVCA"), which applies to state and federal lawsuits commenced on or after January 6, 2012, defines the standard for showing the amount in controversy. Federal Courts Jurisdiction and Venue Clarification Act of 2011, PL 112-63, December 7, 2011, 125 Stat 758, Title II, § 205.

22. Under the JVCA, Congress clarified that the *preponderance of the evidence* standard applies to removals under 28 U.S.C. § 1332(a). *See* H.R. Rep. 112-10 at 16 ("defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met"). 28 U.S.C. § 1446(c)(2)(A) provides, in relevant part, that "the notice of removal may assert the amount in controversy if the initial pleading seeks . . . a money judgment, but the State practice . . . permits recovery of damages in excess of the amount demanded." Under these circumstances, "removal of the action is proper on the basis of an amount in controversy . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)," or $75,000. 28 U.S.C. § 1446(c)(2)(B). Accordingly, a removing defendant must demonstrate that the amount in controversy is more than $75,000 by a preponderance of the evidence, not to a legal certainty.

23. The United States Supreme Court held that "as specified in §1446(a), a defendant's notice of removal need include only a *plausible allegation* that the

amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (emphasis added). The Ninth Circuit also recently rejected application of the legal certainty standard for removals. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. Aug. 27, 2013) ("A defendant seeking removal . . . must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum").

24. To meet this relatively low burden of production, *a defendant may rely on plaintiff's allegations, which are assumed to be true*, and provide supplementary facts or numbers upon which the amount in controversy can reasonably be calculated. *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("In addition to the contents of the removal petition, the court considers 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,' such as affidavits or declarations"). Such calculations are more than sufficient to establish the amount in controversy.

25. As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition). In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *see also Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

26. Here, Plaintiff seeks compensatory damages, special damages, emotional distress damages, punitive damages, special damages, attorneys' fees, and litigation expenses. (Ex. 1, Complaint, Prayer for Relief subparts 1-6.)

27. Plaintiff's claim for past and future wages must be based on her compensation during the time of her employment with KDP. Plaintiff alleges that she was terminated on July 27, 2018. (Exhibit 1, Complaint, ¶ 22.) At the time of her termination, Plaintiff earned an hourly wage of approximately $22.47 per hour. (*See* Cetin Decl. ¶ 5.).

### i. The Amount In Controversy On Plaintiff's Potential Back Pay and Front Pay Claims Total Approximately $155,792.00

28. Plaintiff filed her Complaint on November 29, 2018, approximately four months after her alleged July 27, 2018 termination. Because her wage at the time of termination was $22.47 per hour and she worked an average of 40 hours per week, she received an annual compensation of approximately $46,737.60 per year or $3,894.80 per month during her employment with KDP. (*Id.*) Although KDP denies Plaintiff is entitled to recover any such damages, if she is able to recover back wages from her alleged last date of employment until the present—approximately four months—the amount of back pay could equal **$15,579.20** ($3,894.80 per month x four months). Further, if the case proceeds to trial in January 2020, a year from when it was removed, and Plaintiff remains unemployed, she would likely seek an additional twelve months of lost wages, which is approximately **$46,737.60** in back pay ($3,894.80 per month x 12 months). In total, at the time of trial, Plaintiff will likely seek approximately **$62,316.80** in back pay ($15,579.20 + $46,737.60).

29. In addition to Plaintiff's potential back pay, front pay awards in California frequently span a number of years. *See, e.g., Bihun v. AT&T Information Systems, Inc.*, 13 Cal. App. 4th 976, 996-997 (1993) (in an action brought by the plaintiff alleging sexual harassment, retaliation, and wrongful termination, court affirmed front pay award that compensated plaintiff for the remainder of her entire working life) (*disapproved on other grounds in Lakin v. Watkins Associated Indus.*, 6 Cal. 4th 644 (1993)); *Horsford v. Board Of Trustees Of California State University*,

132 Cal.App.4th 359, 389 (2005) (in a retaliation, discrimination, and wrongful termination action brought by three plaintiffs, the court upheld a front pay award that compensated one of the plaintiffs for two years). If Plaintiff seeks front pay damages for only the two year period immediately following trial, the amount of future wages in controversy could total at least an additional **$93,475.20** ($46,737.60 per year x 2 years). Accordingly, a reasonable estimate of Plaintiff's claims for back pay and front pay is at least **$155,792.00** ($62,316.80 in back pay + $93,475.20 in front pay).

### ii. **Plaintiff's Potential Emotional Distress Damages Alone Exceed $75,000**

30. Plaintiff also claims damages for emotional distress. (*See* Exhibit 1, Complaint, ¶¶ 25, 33, 39, 44, 51; Prayer for Relief, ¶ 3.) A review of jury verdicts in California—attached as **Exhibit 5** and authenticated in paragraph 6 of the Declaration of Amber L. Roller filed with this Notice—demonstrates that emotional distress awards in harassment and retaliation cases commonly exceed $75,000. The following cases have resulted in emotional distress damages awards in excess of the $75,000 threshold:

- *Olivares v. Dason,* No. CIVDS-13-00810, 2016 WL 1237910 (San Bernardino County Sup. Ct. Feb. 25, 2016) (**$1,000,000 for emotional distress** in sexual harassment case where the plaintiff claimed owner of dental office in which she worked sexually harassed her and manager failed to take sufficient action to stop the harassment);
- *Vandervoort v. Fontana Unified Sch. Dist., et. al.*, No. CIVDS-12-06421, 2015 WL 5012830 (San Bernardino County Sup. Ct. Mar. 2, 2015) (awarding **$225,000 for sexual harassment claim and $1,262,000 for failure to prevent sexual harassment claim** by school district police department employee claiming school police officer sexually assaulted her and employer failed to prevent the sexual harassment);

- *Berdnik v. Fontana Unified Sch. Dist.,* No. CIVDS-12-10595, 2015 WL 4183508 (San Bernardino County Sup. Ct. July 2, 2015) (**$75,000** in sexual harassment case by school district police department employee claiming school police officer sexually assaulted her);
- *Boyd v. Delta Tech. Indus.,* No. CIVDS-12-00567, 2017 WL 8233669 (San Bernardino County Sup. Ct. Feb. 22, 2017) (**$20,000 for emotional distress** in sexual harassment case where the plaintiff claimed co-worker sexually harassed her).

(True and correct copies of these verdicts are attached as Exhibit 5 to Roller Decl., ¶ 6.)

31. In *Olivares v. Dason,* No. CIVDS-13-00810, 2016 WL 1237910 (San Bernardino County Sup. Ct. Feb. 25, 2016), the plaintiff alleged that the owner of the dental office in which she worked sexually harassed her and that her manager failed to take sufficient action to stop the harassment. Accepting the plaintiff's facts, the jury awarded her $1 million dollars for emotional distress, among other damages.

32. Here, Plaintiff's allegations that she was harassed are similar to both the factual and legal issues raised in the cases above. Given Plaintiff's allegations, when measured in light of the allegations and damages awarded in the cases cited above, Plaintiff's prayer for emotional distress damages demonstrates that, at the time of removal, the amount in controversy exceeds $75,000.

### iii. The Amount in Controversy on Plaintiff's Punitive Damage Claim Exceeds $75,000.

33. The Court must also consider Plaintiff's requests for punitive damages in determining the amount in controversy. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action"); *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Romo v. FFG Ins. Co.,* 397 F. Supp.

2d 1237, 1240 (C.D. Cal. 2005) (where authorized, punitive damages are considered as part of the amount in controversy in meeting the prerequisite for diversity jurisdiction) (*see also* Exhibit 1, Complaint, ¶¶ 34, 40, 45, 52; Prayer for Relief at ¶ 4).

34. Plaintiff's request for punitive damages weighs in favor of establishing the amount in controversy.

35. Punitive damages may be substantial and in some cases even exceed the amount in controversy. In fact, courts have affirmed jury verdicts exceeding $1 million in punitive damages in alleged wrongful termination cases. *See, e.g., Leggins v. Rite Aid Corporation, et. al.*, No. BC511139, 2015 Jury Verdicts LEXIS 7889 (L.A. County Sup. Ct.) (awarding $5,000,000 in punitive damages in case involving claims of harassment, retaliation, and wrongful termination, among other things); *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009). In *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2004), the United States Supreme Court held that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "single-digit multipliers are more likely to comport with due process."

36. Here, Plaintiff is alleging that she suffered harassment and retaliation, and that she was wrongfully terminated. Therefore, in addition to Plaintiff's special and general damages discussed above, and, again, even from a conservatively measured standpoint, Plaintiff's prayer for punitive damages demonstrates that the amount in controversy exceeds $75,000. *See Haase v. Aerodynamics Inc.*, No. 2:09-cv-01751-MCE-GGH, 2009 WL 3368519, at *3-4 (E.D. Cal. 2009) (finding that even a minimum award of punitive damages would satisfy the jurisdictional requirement).

### iv. It Is More Likely Than Not That Attorney Fees For Bringing A FEHA Claim to Trial Exceed $75,000.

37. Finally, the Court may consider attorney fees when determining the amount in controversy in a FEHA case. *See Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (2002); *Haase*, 2009 WL 3368519, at *5 ("because attorney's fees are expressly authorized by statute, such fees may be included in determining the amount in controversy"). Courts within the Ninth Circuit have recognized that "attorneys' fees in individual discrimination cases often exceed the damages." *See Simmons, 209 F. Supp. 2d* at 1035.

38. In *Rhoton v. Ryder*, No. 982350, 2000 WL 1084569 (C.D. Cal. Feb. 10, 2000), the plaintiff alleged she was retaliated against for making complaints of gender and disability discrimination, when her employer terminated her after she returned from a medical leave. Accepting the plaintiff's facts as true, the jury awarded $75,000 in general damages/emotional distress, plus an additional $91,000 in attorney fees pursuant to the FEHA. Similarly, in *Akers vs. County of San Diego,* No. 718187, 1999 WL 1938858 (Cal. Super. Ct. Nov. 8, 1999), a jury awarded a plaintiff $250,000 on her FEHA retaliation claim, plus an additional $273,481 in attorney fees when she alleged she was discriminated against because of her pregnancy and thereafter retaliated and constructively discharged.

39. Accordingly, the cases cited above and Plaintiff's request for attorney fees shows that the amount in controversy exceeds $75,000.

### v. The Amount In Controversy Exceeds $75,000.

40. In sum, when Plaintiff's potential emotional distress damages, punitive damages, and attorney fees are tabulated, it easily becomes "more likely than not" that the amount at issue in this lawsuit exceeds the minimum amount required for diversity jurisdiction. *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860 (9th

Cir.) *opinion amended and superseded on denial of reh'g,* 102 F.3d 398 (9th Cir. 1996).[1]

41. Based upon the allegations contained in Plaintiff's Complaint, as discussed above, KDP is informed and believes and alleges that the amount in controversy in this action has been met and, therefore, Plaintiff seeks damages within the jurisdictional authority of this Court. Since diversity of citizenship exists between the Plaintiff and KDP and the amount in controversy between the parties is in excess of $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1). This action is therefore proper for removal to this Court.

## VI. NO JOINDER REQUIRED

42. Unnamed or doe defendants are not required to join in removal. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190 n.1 (9th Cir. 1988) (doe defendants need not join in removal).

## VII. NOTICE OF REMOVAL TO PLAINTIFF

43. Following the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff's Counsel of Record and a copy of the Notice of Removal will be filed with the Clerk of the San Bernardino County Superior Court.

## VII. PRAYER FOR REMOVAL

44. WHEREFORE, because this civil action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs, KDP respectfully requests that this Court exercise its removal jurisdiction over this action. Accordingly, KDP prays that this civil action be removed from the Superior

---

[1] By estimating the amount Plaintiff may recover if she prevails, KDP does not concede that Plaintiff will prevail on her claims or that, if she prevails, she is entitled to damages in any particular amount or at all. KDP reserves the full right to dispute Plaintiff's claims with respect to both liability and damages.

Court of the State of California, County of San Bernardino, to the United States District Court of the Central District of California, Eastern Division.

45. In the event this Court questions the propriety of this Notice of Removal, KDP requests that the Court issue an Order to Show Cause so that KDP may have an opportunity to more fully brief the basis for this removal.

DATE: January 2, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Amber L. Roller
Amber L. Roller
Shardé T. Skahan

Attorneys for Defendant
KEURIG DR PEPPER INC.

36838626.1